1 **RUSSELL LAW, PC**
2 L. David Russell (Cal. Bar No. 260043)
  david@russelllawpc.com
3 1500 Rosecrans Avenue, Suite 500
  Manhattan Beach, California 90266
4 Telephone: (323) 638-7551
5 Fax: (323) 760-7458

6 **QURESHI LAW PC**
7 Omar G. Qureshi (Cal. Bar No. 323493)
  omar@qureshi.law
8 700 Flower Street, Suite 1000
9 Los Angeles, California 90017
  Telephone: (213) 600-6096
10 Fax: (213) 277-8989

11

12 *Attorneys for Plaintiff and the Proposed Class*

13 **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**
14

15 JOSHUA DEIGHTON, on his own          Case No.:
16 behalf and on behalf of his beneficiary
   son, C.D., and all others similarly
17 situated,

18            Plaintiff,                 **CLASS ACTION COMPLAINT**

19       v.

20 CIGNA HEALTH AND LIFE
   INSURANCE COMPANY; DISNEY
21 SIGNATURE BENEFITS PLAN;
   INVESTMENT AND
22 ADMINISTRATIVE COMMITTEE
23 OF THE WALT DISNEY COMPANY
   SPONSORED QUALIFIED BENEFIT
24 PLANS,

25            Defendants.

26

27

28

Plaintiff Joshua Deighton on behalf of himself, his beneficiary son C.D., and all others similarly situated, sets forth herein the allegations of his Complaint against Cigna Health and Life Insurance Company ("Cigna"), Disney Signature Benefits Plan (the "Disney Plan"), and Investment and Administrative Committee of the Walt Disney Company Sponsored Qualified Benefit Plans (the "Disney Committee"), collectively ("Defendants").

## INTRODUCTION

1.      Even before the COVID-19 pandemic, mental illness among both children and adults had been increasing dramatically in the United States. Predictably, the COVID-19 pandemic has only exacerbated this trend. For example, the number of people looking for help to cope with anxiety and depression skyrocketed in 2020—by 93 percent and 62 percent respectively. This includes people struggling with thoughts of suicide, especially among our nation's youth. *See The State of Mental Health in America, available* at https://mhanational.org/issues/state-mental-health-america.

2.      As the Centers for Disease Control and Prevention ("CDC") has recognized: "Mental and physical health are equally important components of overall health." https://www.cdc.gov/mentalhealth/learn/index.htm. Recognizing the importance of mental health, Congress enacted the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), 29 U.S.C. § 1185a, *et seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. sections 1001, *et seq.*, of which the Parity Act is a part. The Parity Act's purpose was to end discrimination in the provision of insurance coverage for mental health treatment, as compared to medical and surgical services. While the Parity Act does not require health care plans to cover mental health services, if a plan chooses to cover mental health services, such coverage must be provided "at parity" with medical/surgical benefits.

CLASS ACTION COMPLAINT

3.      Defendants are violating the legal and fiduciary duties imposed on them by the Parity Act and other federal and state laws that they owe participants in the Disney Plan by improperly restricting the scope of their insurance coverage for residential treatment facilities that treat mental health issues.  Because they have been, and are likely to continue to be harmed, by Defendants' conduct, Plaintiff brings this complaint on behalf of himself and all others similarly situation, to seek declaratory, injunctive, and other equitable relief.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to ERISA section 502(e)(1), 29 U.S.C. section 1132(e)(1), and 28 U.S.C. section 1331 (federal question jurisdiction).

5.      Further, this action is brought under 29 U.S.C. section 1132(a), (e), (f) and (g), as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed by ERISA.

6.      This Court has personal jurisdiction over Cigna because ERISA provides for nationwide service of process, and Cigna has minimum contacts with the United States.  *See* 29 U.S.C. § 1132(e)(2).

7.      Plaintiff's claims, as well as claims made by the putative class, arise out of the Plan, which is principally administered in this District.  Moreover, Plaintiff resides in this District.  Thus, venue is proper in this judicial district pursuant to 29 U.S.C. section 1132(e)(2) (setting forth special venue rules applicable to ERISA actions).

## THE PARTIES

8.      Starting on January 1, 2021, Plaintiff Joshua Deighton was an employee of the Walt Disney Company and became a participant under a self-funded group health plan arranged through his employer, Walt Disney Company, as defined by ERISA section 3(7) and 29 U.S.C. section 1002(7), defendant Disney Plan.  Plaintiff brings this action on behalf of himself, his son C.D., and all others

CLASS ACTION COMPLAINT

1
2
similarly situated.  Plaintiff was a participant in the Plan until he left his position at the Walt Disney Company in January 2022.

3
4
5
6
7
9.     C.D. is the son and dependent of Plaintiff Joshua Deighton.  C.D. resides in Glendale, California.  C.D. is a beneficiary, as defined by ERISA section 3(8) and 29 U.S.C. section 1002(8).  C.D.'s insurance coverage is through his father's employment with Disney.  Plaintiff Joshua Deighton has been designated his son's agent, pursuant to a durable power of attorney.

8
9
10
10.     Disney Committee is the Plan Administrator for the Plan.  The Plan Administrator's stated role is to administer the Plan, interpret its provisions, and resolve all issues arising in the administration of the Plan.

11
12
13
14
15
11.     Cigna is a corporation with its principal place of business in Bloomfield, Connecticut.  Cigna administers and makes benefit determinations related to ERISA group health care plans around the country.  One of the group health care plans it administered and made benefit determinations for was the Disney Plan, for which it served as Claims Administrator.

16
**SUBSTANTIVE ALLEGATIONS**

17
**I.     Legal Background**.

18
19
20
21
22
23
24
25
12.     Congress enacted the Parity Act on October 3, 2008, as an amendment to ERISA.  *See* 29 U.S.C. § 1185a.  The Parity Act became effective one year later, on October 3, 2009.  The law's purpose was to end discrimination in the provision of insurance coverage for mental health treatment, as compared to medical and surgical services.  While the Parity Act does not require health care plans to cover mental health services, if a plan chooses to cover mental health services, such coverage must be provided "at parity" with medical/surgical benefits.

26
27
28
13.     The Disney Plan, as well as numerous other group health plans, cover mental health services.  Therefore, under the Parity Act, Defendants must administer the Disney Plan to ensure that:

CLASS ACTION COMPLAINT

[T]he treatment limitations applicable to such mental health or substance use disorder benefits are *no more restrictive* than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are *no separate treatment limitations* that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii) (emphasis added).

14.    ERISA requires Defendants to offer coverage, administer group health plans, and process claims in compliance with the Parity Act and its implementing regulations, and to refrain from enforcing plan terms that conflict with federal law.  Moreover, the Parity Act and its regulations are incorporated as additional "terms" into the Disney Plan and other self-funded group health plans that cover mental health services themselves, modifying and eliminating any literal terms that are inconsistent with the Parity Act.  By failing to comply with the Parity Act as incorporated into the terms of these group health plans, Defendants are systematically and uniformly failing to process claims and administer those plans properly. Additionally, Defendants misinformed Plaintiff and all class members about their rights to mental health benefits under the applicable plans and the Parity Act.

15.    Defendants are ERISA fiduciaries, as defined by 29 U.S.C. section 1104(a).  As such, Defendants are legally required to discharge their duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of "providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the Plans.  They must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the Plans they administer, so long as such terms are consistent with ERISA.  Indeed, as fiduciaries, Defendants owe a duties of loyalty and care to Plan participants and beneficiaries, including Plaintiff and C.D.  Defendants must also refrain from conduct that violates state and federal law.

CLASS ACTION COMPLAINT

## II.   Factual Allegations Regarding C.D.

**A.   C.D. Enrolls at BNI Treatment Center.**

16.   At all times relevant, C.D. was a minor with Autism Spectrum Disorder ("ASD" or "Autism").   ASD constitutes a disability and medical condition.  ASD is also genetic.

17.   In April 2019, C.D. had to be removed from school because he had become unstable as a result of his ASD.  C.D.'s parents, Joshua and Meredyth Deighton began looking for a residential treatment facility that could help stabilize Plaintiff in April 2019.

18.   On May 7, 2019, C.D. enrolled at BNI Treatment Center ("BNI"), a residential teen treatment center for mental health and substance abuse located in Agoura Hills near Los Angeles in California.  While at BNI, C.D. was antagonized by BNI's staff.  BNI's staff repeatedly threatened C.D., who was only a young teenager, with calling the police on him and committing him to a hospital for involuntary psychological confinement.

19.   The mistreatment at BNI became so bad that C.D. had to be committed to a full-time residential facility out of state.

**B.   C.D. Enrolls at Daniels Academy.**

20.   On August 15, 2019, C.D. was admitted to Daniels Academy.  Daniels Academy is a 24/7 residential treatment facility located in Heber City, Utah.

21.   C.D. was discharged from Daniels Academy on August 13, 2021.

**C.   Joshua Deighton Is Hired By The Disney Company And Becomes A Plan Participant.**

22.   On January 1, 2021, Joshua Deighton became an employee of the Disney Company and participated in the Plan.  At the time, C.D. was had already been admitted for treatment at Daniels Academy.

**D.    Cigna Denies C.D.'s Benefits Claim.**

23.    Plaintiff submitted a claim to Cigna for the costs of C.D.'s treatment at Daniels Academy, from the time he started participating in the Plan on January 1, 2021, until C.D. was discharged on August 13, 2021.  On or around October 19, 2021, Cigna sent Plaintiff a letter denying Plaintiff's claim for reimbursement.

24.    Cigna's denial letter provided the following rationale for denying Plaintiff's claim:

> The clinical basis for this decision is: Based upon my review of the available clinical information and the MCG Behavioral Health Guidelines, medical necessity was not met for continued stay at Residential Behavioral Health Level of Care, Child or Adolescent, ORG: B-902-RES from 01/01/2021 - 08/13/2021, as you no longer required treatment at the Residential Behavioral Health Level of Care, Child or Adolescent as your condition was adequately stabilized and/or improved so that you could be safely and effectively treated at a less restrictive level of care. You had not recently demonstrated impairments in functioning of such severity as a result of a mental health disorder to require the intensity level of treatment intervention and 24 hour monitoring of the Residential Behavioral Health Level of Care, Child or Adolescent. The information provided does not indicate that you were so impaired that you could not carry out your essential daily functions. You had not developed new symptoms and/or behaviors that required this intensity level of treatment. A less restrictive level of care was available for your safe and effective treatment.

25.    Plaintiff submitted a level-one appeal to Cigna.  On July 8, 2022, Cigna responded by denying the appeal and upholding its original decision, providing the following rationale:

> The clinical basis for this decision is: Based upon my review of the available clinical information received initially and with this appeal and the MCG Behavioral Health Guidelines, medical necessity was not met for continued stay at Residential Behavioral Health Level of Care, Child or Adolescent from O 1/01/2021 - 08/13/2021 as your condition had adequately stabilized and/or improved so that you could

have been safely and effectively treated at a less restrictive level of care. You had not recently demonstrated impairments in functioning of such severity as a result of a mental health disorder to require the intensity level of treatment intervention and 24 hour monitoring of the Residential Behavioral Health Level of Care. You had not developed new symptoms and/or behaviors that required this intensity level of treatment. A less restrictive level of care was available for your safe and effective treatment.

26.     Plaintiff subsequently submitted a level-two appeal to Cigna. In that appeal, Plaintiff also requested that he be provided with the MCG Behavioral Health Guidelines that Cigna had relied on.

27.     On January 12, 2023, Cigna denied on this appeal, standing on the grounds stated previously that C.D's residential behavioral health stay at Daniels Academy from January 1, 2021 through August 13, 2021 was not medically necessary. Cigna failed to provide the MCG Behavioral Health Guidelines that Plaintiff requested.

28.     In light of the established plan documents, written statements and representations by Cigna to Plaintiff and other members of the class, any attempt by class members to pursue administrative remedies is futile. Nonetheless, Plaintiff completed the internal appeals process with Cigna, as detailed in the Disney Plan, to no avail. He has exhausted his administrative remedies.

**D.     Defendants' Denial of Coverage Violated Federal Law.**

29.     Defendants' refusal to cover C.D.'s intermediate behavioral health services under the Disney Plan violated the Parity Act. The Parity Act requires that, when a group health plan provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only

with respect to mental health or substance use disorder benefits.  29 U.S.C. § 1185a(a)(3)(A).

30.     Under the Parity Act, plans that offer behavioral health benefits are required to offer those benefits *at parity* with comparable medical or surgical benefits.  The Parity Act establishes six broad benefit classifications: (a) Inpatient, in-network; (b) Inpatient, out-of-network; (c) Outpatient, in-network; (d) Outpatient, out-of-network; (e) Emergency care; (f) Prescription drugs.

31.     Within these classifications, the Parity Act mandates coverage for *intermediate* services—services that fall between inpatient care for acute conditions and regular outpatient care—such as residential treatment, partial hospitalization, and intensive outpatient treatment.  Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 FR 68240-01 (Nov. 13, 2013).  Intermediate services can be effective at improving outcomes for people with mental health conditions.

32.     Daniels Academy provides intermediate services for mental health conditions, including residential treatment.   Regarding benefits for these intermediate services, the Parity Act requires that:

> Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications.  For example, if a plan or issuer classifies care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.

Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 FR 68240-01 (Nov. 13, 2013).

33.     In other words, Defendants must administer benefits for intermediate behavioral health facilities (like residential treatment facilities) in a way

CLASS ACTION COMPLAINT

comparable to the administration of benefits for intermediate medical facilities (such as skilled nursing, inpatient rehabilitation facilities, and hospice facilities).

34. Moreover, the regulations implementing the Parity Act confirm that:

> A group health plan (or health insurance coverage) may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification[.]"

45 C.F.R. § 146.136(c)(4). These include the nonquantitative treatment limitations applied by Defendants, including "[r]estrictions based on . . . facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id.*

35. In contravention of the Parity Act and its implementing regulations, Defendants' denial of Plaintiff's claims applied disparate requirements for residential treatment facilities and intermediate medical facilities—like rehabilitation facilities, inpatient hospice facilities, and skilled nursing facilities. For example, while Defendants evaluate whether or not intermediate behavioral health treatment is medically necessary based on the MCG criteria, a type of nonquantitative treatment limitations, Defendants do not utilize any clinical criteria for intermediate medical treatment in a skilled nursing facility. For Defendants to use medical necessity criteria of any kind to evaluate intermediate behavioral health treatment while not using any criteria to evaluate comparable medical treatment is a blatant disparity that constitutes a medical management standards nonquantitative treatment limitation.

36.     As another example, Defendants denied C.D.'s residential treatment at Daniels because they claimed he was not experiencing acute functional impairment or other psychiatric symptoms that directly interfered with his ability to keep himself safe. In doing so, Defendants intentionally misapplied the MCG discharge criteria for residential care in order to impose acute severity of illness requirements on subacute or intermediate behavioral health treatment.   But Defendants do not require patients to exhibit acute medical symptoms in order to qualify for treatment in an intermediate medical facility, including inpatient hospice facilities, and inpatient rehabilitation.   Indeed, acute severity of illness requirements are inconsistent with generally accepted standards of care for intermediate facilities. These acute severity of illness requirements impose yet another NQTL on intermediate behavioral health benefits that does not apply to comparable intermediate medical benefits.

## **CLASS ACTION ALLEGATIONS**

37.     Plaintiff and the class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

38.     Plaintiff brings this action on behalf of himself, his beneficiary son C.D., and all others similarly situated as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure.   Pursuant to Rule 23(b)(1) and (b)(2), Plaintiff seeks certification of a class defined as follows:

> All persons covered under the Plan, who sought and were denied coverage for all or a portion of residential treatment for mental health disorders, within the applicable statute of limitations, or whose requests for coverage for all or a portion of residential treatment for mental health disorders will be denied in the future.

39.     Plaintiff and the class reserve the right under Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

### A.    Numerosity.

40.    The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impractical.  The total number of class members who were enrolled in the Disney Plan alone is expected to number in the thousands.  Thus, while the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of individuals covered under plans who have been similarly affected as Plaintiff.

### B.    Common Questions of Law and Fact.

41.    Common questions of law and fact exist as to all members of the proposed class, which include the following:

- Whether Defendants applied the wrong standard in reviewing class members' claims for coverage for residential treatment of mental health disorders under the Parity Act.
- Whether Defendants failed to provide Plan documents within 30 days of Class members' written request.
- Whether Aetna breached their fiduciary duties to the class members by relying on the incorrect standard when reviewing class members' claims.
- Whether the class is entitled to injunctive relief.

### C.    Typicality of the Class Representative's Claims.

42.    The claims of the named Plaintiff are typical of the claims of the proposed class.  Upon information and belief, the relevant provisions of Plaintiff's group health plan, which were enforced by Defendants in denying Plaintiff's claims, are substantially similar to the provisions in the belonging to the other class members, which were likewise enforced by Defendants.  Upon information of the belief, Defendants' failure to apply the requirements of the Parity Act when reviewing class members' claims for residential treatment of mental health disorders led to the denial of class members' claims for coverage of residential treatment of mental health disorders, as it did for Plaintiff's claims.  Upon

CLASS ACTION COMPLAINT

1    information and belief, Defendants failed to provide Plan documents within 30
2    days of class members' written requests.

3                    **D.    Adequacy of Representation**.

4            43.    Plaintiff will fairly and adequately represent and protect the interests
5    of the members of the proposed class.  There are no conflicts of interest between
6    Plaintiff and members of the class and Plaintiff is cognizant of his duties and
7    responsibilities to the entire class.  Plaintiff's counsel are competent and
8    experienced in litigating complex litigation and class actions.

9                    **E.    Rule 23(b) Requirements**.

10           44.    Absent certification of a class, inconsistent or varying adjudications
11   with respect to individual members of the class would establish incompatible
12   standards of conduct for Defendants.  Rule 23(b)(1)(A).

13           45.    Adjudications with respect to individual class members would be
14   dispositive of the interests of the other members not parties to the individual
15   adjudications or would substantially impair or impede their ability to protect their
16   interests.  Rule 23(b)(1)(A).

17           46.    Defendants have acted or refused to act on grounds generally
18   applicable to the class, thereby making appropriate final injunctive relief or
19   corresponding declaratory relief with respect to the class as a whole.  Rule
20   23(b)(2).

21           47.    A class action is superior to all other available means for the fair and
22   efficient adjudication of this controversy.  Individual joinder of all members of the
23   proposed class is not practicable, and common questions of law and fact exist as
24   to all class members.  Class action treatment will allow those similarly situated
25   persons to litigate their claims in the manner that is most efficient and economical
26   for the parties and the judicial system.  Plaintiff is unaware of any difficulties that
27   are likely to be encountered in the management of this action that would preclude
28   its maintenance as a class action.  Rule 23(b)(3).

CLASS ACTION COMPLAINT

**F.    Notice to the Proposed Class.**

48.    Upon certification, Plaintiff proposes that a notice be mailed and e-mailed to the class members.  The identity and contact information for the class members are known by Defendants. The notice would inform class members on which claims were certified by the Court, provide class members information on how to participate in the lawsuit, as well as information on how to be excluded from the lawsuit.  Plaintiff proposes that class members be given thirty (30) days in which to exclude themselves from the certified action.

**FIRST CLAIM FOR RELIEF**
**DENIAL OF BENEFITS**
**[29 U.S.C. § 1132(a)(1)(B)]**
**(On Behalf of Plaintiff and the Class)**

49.    Plaintiff and the class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

50.    Plaintiff brings this cause of action individually, on behalf of his beneficiary son C.D., and on behalf of the class.

51.    29 U.S.C. § 1132(a)(1)(B) provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

52.    Plaintiff and the class are entitled to a declaration regarding their rights to coverage of medically necessary mental health services without the imposition of nonquantitative limits for the treatment of mental illness in residential treatment facilities.  Plaintiff and the class are also entitled to an injunction requiring Defendant to reprocess claims for residential treatment for mental health disorders that Defendants previously denied in whole or in part, consistent with the Parity Act.

CLASS ACTION COMPLAINT

**SECOND CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTIES /**
**EQUITABLE & INJUNCTIVE RELIEF**
**[29 U.S.C. § 1132(a)(3)]**
**(On Behalf of Plaintiff and the Class)**

53.     Plaintiff and the class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

54.     Plaintiff brings this cause of action individually, on behalf of his beneficiary son C.D., and on behalf of the class.

55.     Defendants are all fiduciaries of the Plan.  ERISA imposes strict fiduciary duties upon plan fiduciaries.  29 U.S.C. § 1104(a)(1)(D) states, in relevant part, that a plan fiduciary must discharge its duties with respect to a plan "solely in the interest of the participants and beneficiaries and … in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III," which includes the requirements of the Parity Act.  Additionally, the terms of an ERISA plan include the requirements in the Parity Act.

56.     Defendants violated their obligations under 29 U.S.C. § 1104(a)(1) by failing to act in accordance with the Parity Act documents and instruments governing the Plans.  Accordingly, Defendants breached its fiduciary duties to Plaintiff and all class members.  Plaintiff and the class have been harmed, and are likely to be harmed in the future, by Defendants' breaches of fiduciary duty described hereinabove.

57.     29 U.S.C. § 1132(a)(3) provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."  Plaintiff and the class seek to enjoin Defendants from continuing to apply nonquantitative limits for the treatment of mental illness in residential treatment facilities.

58.     29 U.S.C. § 1132(a)(3) further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of

ERISA or enforce plan terms.  To the extent full relief is not available under 29 U.S.C. § 1132(a)(1)(B), Plaintiff and the class seek equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution, estoppel, and surcharge arising out of the failure to administer the terms of the Plans as modified by the Federal Parity Act and implementing regulations.  Specifically, Plaintiff seeks an order (a) requiring Defendants to reprocess claims for residential treatment for mental health disorders that Defendants previously denied in whole or in part, consistent with the Parity Act and (b) ordering Defendants to pay a surcharge or other make-whole relief to Plaintiff and the other class members in an amount equivalent to the revenue Defendants generated for providing mental health related claims administration services with respect to claims filed by Plaintiff and the other class members, expenses that Defendants and their corporate affiliates avoided due to their wrongful denials, the additional revenue Defendants received as a result of those cost avoidances, the out-of-pocket costs that Plaintiffs and other Class members incurred following Defendants' wrongful denials, and/or pre-judgment interest.

### THIRD CLAIM FOR RELIEF
### REQUEST FOR STATUTORY PENALTIES
### [29 U.S.C. § 1132(a)(1)(A), (c)]
### (On Behalf of Plaintiff and the Class)

59.    Plaintiff and the class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

60.    Plaintiff brings this cause of action individually, on behalf of his beneficiary son C.D., and on behalf of the class.

61.    Plaintiff, in writing, requested that he be provided with the MCG Behavioral Health Guidelines that Defendants had relied on to deny his claim. Defendants failed to provide those documents within 30 days of Plaintiff's request.

62.    The failure of Defendants to produce the requested documents, under which the Plan was operated, provides the factual and legal basis under 29 U.S.C.

§1132(a)(1)(A) and (c) for this count to improper statutory penalties up to $110 per day from 30 days from the date of each of these letters to the date of the production of the requested documents.

63.     In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

**<u>REQUEST FOR RELIEF</u>**

Wherefore, Plaintiff, individually, on behalf of his beneficiary son C.D., and on behalf of the class, pray for judgment in their favor and requests the following relief:

A.     Certify the class for class treatment under Federal Rule of Civil Procedure 23; appoint Plaintiff as class representative; and designate L. David Russell of Russell Law, PC and Omar Qureshi of Qureshi Law PC as class counsel;

B.     Enter an injunction requiring Defendants to reprocess claims for residential treatment for mental health disorders that Defendants previously denied in whole or in part, consistent with the Parity Act;

C.     Enjoin Defendants from further violations of the Parity Act and its implementing regulations, as incorporated into the terms of the plans it administers;

D.     Enter an injunction requiring Defendants to pay a surcharge or other make-whole relief to Plaintiff and the other class members in an amount equivalent to the revenue Defendants generated for providing mental health claims administration services with respect to claims filed by Plaintiff and the other class members, the additional revenue Defendants received as a result of those cost-avoidances, the out-of-pocket costs that Plaintiff and other class members incurred following Defendants' wrongful denials, and/or pre-judgment interest;

CLASS ACTION COMPLAINT

E.      Declare that Defendants may not apply contract provisions, policies or practices that impose nonquantitative limits for the treatment of mental illness in residential treatment facilities that are not applied to analogous medical and surgical services;

F.      Declare that the nonquantitative limits for the treatment of mental illness in residential treatment facilities enforced by Defendants are void and unenforceable;

G.      Award statutory penalties against Defendants of up to $110 a day after the first 30 days for each instance of Defendants' failure to provide Plaintiff with Plan documents he requested;

H.      Award Plaintiff disbursements and expenses for this action, including reasonable attorneys' fees, in amounts to be determined by the Court, pursuant to 29 U.S.C. section 1132(g); and

I.      Grant such other relief as is just and proper.

DATED: August 23, 2023          Respectfully submitted,

                                */s/ Omar G. Qureshi*


                                **RUSSELL LAW, PC**
                                L. David Russell (Cal. Bar No. 260043)
                                david@russelllawpc.com
                                1500 Rosecrans Ave, Suite 500
                                Manhattan Beach, California 90266
                                Telephone: (323) 638-7551

                                **QURESHI LAW PC**
                                Omar G. Qureshi (Cal. Bar No. 323493)
                                omar@qureshi.law
                                700 Flower Street, Suite 1000
                                Los Angeles, California 90017
                                Telephone: (213) 600-6096
                                Fax: (213) 277-8989

                                *Attorneys for Plaintiff and the Proposed Class*

17

CLASS ACTION COMPLAINT